TATTERSFIELD, Appellant, v. SMITH, Superintendent of Banks, et al, Respondents.

(245 N. W. 44.)

(File No. 6838.   Opinion filed November 1, 1932.)

*Danforth & Davenport,* of Sioux Falls, for Appellant.

*Lewis Benson,* of Huron, and *T. B. Thorson,* of Rapid City, for Respondents.

CAMPBELL, P. J.   Plaintiff Tattersfield resided in Moody county, S. D., for a number of years and was a customer and depositor of Moody County Bank.   He removed from South Dakota some years ago, but after his removal continued to do business with Moody County Bank and to maintain an account therein which he used to a considerable extent as a working account for handling and clearing various investments.   Plaintiff was the owner of a real estate mortgage given by one Smith, residing near Colman, S. D.   In October, 1925, Smith, intending to pay the mortgage, wrote plaintiff requesting that the note, mortgage, and satisfaction be forwarded to a bank at Colman, S. D., for collection and remittance.   On October 19, 1925, plaintiff wrote to Moody County Bank advising them of this situation, and saying in part as follows:

" * * * I do not know this bank, or anything about its standing; and really can not see why Mr. Smith cannot handle it through your bank.

"I want to know something about people I do business with. Will you let me know what you think about this bank? * * * "

The Moody County Bank replied under date of October 21, stating that the bank at Colman was responsible, but adding: " * * * In case you do not wish to send the papers to them you can send them to us, and we will handle the matter for you. * * * " Plaintiff replied under date of October 24, saying: "Mr. Smith has not yet called for his papers, but I expect he will in a few days.   When he does I will forward the stuff to your bank." Under date of November 10, 1925, plaintiff sent the Smith note, mortgage, and satisfaction piece to the Moody County Bank under cover of a letter stating in part as follows:

" * * * These papers you will · deliver to the Citizens State Bank of Colman, South Dakota, upon the payment of the sum

of $6,000.00, with interest at six per cent per annum from the 14th day of March, 1925, the money being placed to my credit in your bank.

"Will you kindly acknowledge receipt of these papers so that I may not worry that they have gone astray."

The Moody County Bank promptly acknowledged receipt of the papers and instruction letter. On January 3, 1926, Smith paid to Moody County Bank the sum of $6,290, being the principal and interest due upon his note owned by plaintiff. The Moody County Bank surrendered the note, mortgage, and satisfaction and credited the account of plaintiff with the $6,290 collected. Plaintiff had a balance upon open account in the Moody County Bank on that date of $539.15, and the credit for this principal and interest brought his total account up to $6,829.15. The Moody County Bank, however, did not in any manner advise plaintiff that they had received this money. January 15, 1926, plaintiff, not knowing that the collection had been made, in the course of writing the Moody County Bank about other matters made the following inquiry as to the Smith mortgage: "The Jesse A. Smith matter seems to be at a standstill. I have heard nothing more from Mr. Smith about it. I wonder what is the matter with this?" Receiving no reply to this letter, plaintiff again wrote the bank on January 22, as follows:

"On the 15th inst. I wrote you relative to my bank balance, payment of interest on the 'Yeo' loan, the return of the abstract in the 'Colburn' matter, and the Jesse A. Smith transaction. I have not heard from you as yet?

"Will you kindly give me an answer at once; and at the same time return me the note, Mortgage and Satisfaction of mortgage in re. Jesse A. Smith matter, sent you for delivery on the 12th day of November, 1925. I have a notion this matter will be held up indefinitely."

The Moody County Bank replied to plaintiff under date of January 25. Previously the bank had merely failed to report the receipt of the money. In their letter of January 25, for the first time, they deliberately and affirmatively misrepresented the situation by again failing to report the receipt of the money, and by saying with reference to the matter as follows: "In regard to the

Smith loan, they inform me it will all be cleaned up within a very few days now. Just as soon as it is we will advise you of the fact."

January 27 plaintiff replied to the Moody County Bank and, still ignorant that the bank had received the money from Smith, gave his first direction for an immediate remittance of the money when collected, saying: "Upon receipt of a settlement in the Jesse A. Smith matter will you please forward the money to me at once. I am holding off some obligations I have to meet depending on this settlement." The matter appears to have run along in this condition until April 13, 1926, when plaintiff wrote the Moody County Bank as follows: "I have just written to Mr. Jesse A. Smith relative to the closing up of his loan (you have the papers in your possession), or at least the payment of the interest at this time. Things seem to be going very slow with his new loan." Smith appears to have advised plaintiff for the first time of the true situation, and on April 17, 1926, plaintiff telegraphed the Moody County Bank as follows: "Jesse Smith writes his loan paid Jany 11. If you have not the money mail me loan papers at once. Answer my expense. Immediately." On the same day plaintiff wrote the bank regarding the matter saying:

"I was quite surprised when I received a letter this morning from Mr. Jesse Smith informing me that his loan from me had been closed upon the 11th day of January, 1926, and he had supposed that I got my money at that time. He also said that he had my papers—note, mortgage and satisfaction—in his possession. How they got there without you turned them over to the Colman bank, and they turned them over to him, I do not know. But the fact remains there has been no returns made to me as yet,—hence my telegram to you this morning. It is now eight P. M. and as yet I have received no answer.

"You will note from my correspondence that those papers were not to be turned over to the Colman bank until the money was received by your bank, and that the money should be *at once* transmitted to me, as I need it badly. What has gone wrong with the deal I do not know, but I want to find out at once. If the deal is not closed and you still have the papers, send them to me; but I do not think this is possible in view of Mr. Smith's letter. If

you have collected the money I want it forwarded at once. Under my instructions the money was not for deposit in any bank, but for immediate transmission. Please let me hear from you at once in this matter."

In February, 1926, the Moody County Bank had collected in behalf of plaintiff and credited to his account an item of interest due upon another mortgage owned by plaintiff; so that the credit balance of plaintiff's account in the Moody County Bank on April 17, when he discovered the truth regarding the Smith mortgage, was $6,994.15 made up as follows:

Balance in the account on January 1, 1926..............$ 539.15
Collected on the Smith mortgage in January, 1926...... 6,290.00
Interest collected in February, 1926................... 165.00

Total ..................................... $6,994.15

On April 19, 1926, the Moody County Bank telegraphed plaintiff that they had written him fully, and on the same day the president of the Moody County Bank (who had conducted all the previous correspondence with plaintiff) wrote to plaintiff the following letter:

"When I got to the bank this morning I found your letter and telegram on my desk for attention.

"I have had a siege of the 'flu' but decided I would have to get out today if possible, and clean up anything that might require my attention.

"In regard to the Smith loan, will say that at the time we received the draft from Colman, we handed it to our bookkeeping force with instructions to send out and when notice of returns was received they were to send you duplicate slip. Since that time it has not been called to my attention, and I supposed you had received the slip.

"Since the first of the year we have all had to keep pretty busy to keep things moving, and I want to say that it has been uphill business, and there has been more on my mind the last four months than there was for the last four years. Our checking deposits have gained, but the time deposits are the ones that are like T. N. T. We always thought that they were prefectly harmless,

but they have not proved to be so, but we feel that things are coming our way again.

"Now in regard to the balance which you have here. It would embarrass us very much to have this amount withdrawn at one time, and we have the following first class paper we could let you have. Warrant for $3,000.00 on Flandreau Independent School District drawing 7% interest. This will probably be paid some time this summer. A $1,400.00 1st mortgage 5 year, just taken on a house worth $3,500.00 7%. Also other good paper. If you wish to use this money we would like very much to arrange with you to make payments on a weekly basis to take up the account. Laying our cards face up on the table, it has been a struggle to make the grade, and we feel confident we have arrived, and all we need now is a little time to adjust ourselves. We await your reply, and trust you can handle the above paper for the time being, and assure you we appreciate all business."

Plaintiff replied on April 20, saying:

"Your letter of the 19th inst. at hand this morning. It certainly was some surprise to me to be caught this way. I have submitted the correspondence with the Moody County Bank relative to the collection of the Smith loan through the Colman bank, containing my instructions to immediately forward the money to me, to my attorney and he informs me that these funds are undoubtedly trust funds and are to be held separate and apart from your regular deposits."

"But be that as it may, I am very sorry to hear that the Moody County Bank is in such straits. You do not state what you have to my credit in your bank, but with the Smith money it must be in the neighborhood of $7,110.00. Of this I must have at least $2,500.00 at once to stand off my obligations here. I will take the School Warrant for $3,000.00, under an open endorsement from your bank (not without recourse); and the First mortgage on a house in Flandreau, providing the title is good and the property properly protected with fire and other insurance. The balance can remain in open account. The matter will have to be closed at once."

On April 23, 1926, the president of the bank replied to plaintiff as follows:

"Just got back to the bank for a few minutes. Had a relapse of the flu and am still all in.

"Am sending you the F. E. Stewart loan of $1,400.00 and the Flandreau Independent School District $3,000.00 warrants. Am expecting a good sized draft for cattle, and will send the draft for balance at once."

The situation apparently continued without change until May 15, 1926, when plaintiff wrote the bank, saying:

"It is now some three weeks since I received your letter of the 23rd ult. enclosing F. E. Stewart note and mortgage, and Flandreau school warrant, and in which you said 'am expecting a good sized draft for cattle and will send draft for balance at once.' * * *

"I have heard nothing further about these matters. Will you kindly give me an immediate answer as to 'what is doing,' for this transaction is getting on my nerves, and although I can hardly spare the time just now I see nothing more to do but come down to Flandreau and straighten it out."

Plaintiff apparently received no reply from the bank, and ten days later, on May 25, 1926, he again wrote the bank quoting in full his letter of May 15, and saying: "Why is it that I can not get an answer? I am loth to take any drastic action in the matter, but it is evident I am being forced into it."

Meantime, and on May 22, 1926, the Moody County Bank had closed and gone into the hands of the superintendent of banks for liquidation, its cash on hand at the time of closing being $4,163.69.

As indicated by plaintiff's letter of May 15, 1926, he accepted and received the Flandreau independent school district warrant in the amount of $3,000, and the Stewart mortgage in the amount of $1,400 sent to him by the bank on April 23, 1926. Plaintiff credited the Moody County Bank with these two items aggregating $4,400, leaving his demand against the bank $2,594.15, for which amount he filed proof of claim with the superintendent of banks as a preferred claim. The claim was rejected as a preferred claim although allowed as a common deposit claim, and plaintiff thereupon instituted the present action asking that his said claim for $2,594.15 "be adjudged and decreed a preferred claim against the assets of the said Moody County Bank" and that immediate and preferential payment thereof be ordered.

Findings, conclusions, and judgment below were in favor of the defendants for dismissal of the action with costs, from which judgment and from a denial of his motion for new trial plaintiff has now appealed to this court.

■ The briefs in this case make considerable mention of the "trust fund doctrine," and previous decisions of this court announcing that doctrine are cited. The trust fund doctrine is in no manner involved in this case upon its facts. That doctrine, so far as it relates to preferences, deals with the question of whether or not an insolvent corporation can itself prefer one creditor over another. The issues in this case do not deal with any attempt of the corporation itself to prefer appellant or any other creditor. Appellant here is himself seeking to establish and compel a preference after the corporation has ceased to do business and has gone into the hands of the superintendent of banks for liquidation. It is universally conceded by all courts, even those which repudiate entirely the so-called trust fund doctrine, that after the insolvent corporation has ceased to function and has been taken over in bankruptcy or by a court of equity in receivership for liquidation (and with us the superintendent of banks in charge for purposes of liquidation is, in substance, a statutory receiver under the jurisdiction of a court of equity, Hanson v. Sogn, 50 S. D. 44, 208 N. W. 228), thenceforward as between the creditors "equality is equity" and assets must be ratably distributed excepting as to those creditors who can affirmatively establish some ground or reason for priority.

■ Entirely apart, then, from any question of the right of an insolvent corporation to prefer one creditor over another, in this case the corporation having ceased to do business and having been taken over for liquidation, the burden is upon appellant, if he would have anything more than ratable distribution with other creditors, affirmatively to establish some sufficient reason for priority and preference, and it is to be noted that the real controversy here is not between appellant and the insolvent bank, but between appellant and the other creditors of that bank as represented by the superintendent of banks in charge for liquidation.

Appellant bases his claim of preference under the facts of this case upon two theories.

His first theory is that as to the $6,290 collected by the Moody

County Bank upon the Smith mortgage in January, the relation between appellant and the Moody County Bank was always that of principal and agent for collection, and never that of creditor and debtor. It may be noted parenthetically that this theory could not justify any preference with reference to so much of appellant's balance when the bank closed as might be construed to embrace the $539.15 he had on deposit when the Smith mortgage was collected, nor the item of $165 interest collected in February. This point does not require consideration, however, inasmuch as we are of the opinion that the theory cannot be sustained even to the extent that the balance due appellant when the bank closed includes part of the money collected from Smith.

When appellant sent the Smith note and mortgage to the Moody County Bank under cover of his letter of November 10, 1925, he, in substance, directed the bank to place the money when collected "to my credit in your bank." In other words, appellant's instructions were "collect and deposit," as distinguished from "collect and remit." He gave no directions for remitting until his letter of January 27, 1926, when he said, in substance, that upon collection from Smith the money should be forwarded to him at once. Under these circumstances, it seems very plain that the bank, under the letter of November 10 and at all times prior to January 27, was authorized to collect from Smith and deposit to appellant's credit, and if in fact they did this (and the record shows that they did early in January, 1926), then, upon depositing the money collected to appellant's credit, any relation of principal and agent would cease and the relation of creditor and debtor would arise. Appellant meets this situation by the following argument: He says that on January 27, 1926, he in substance, countermanded his previous instruction to collect and deposit and instructed the bank to collect and remit, whereby from that time forward the bank lacked authority to collect and deposit to his credit and lacked authority thus to change the relationship between them from that of principal and agent to that of creditor and debtor. That when he so changed his instructions on January 27, he had no knowledge that the money had been previously collected and deposited. That the bank, on January 25 and some days after the actual collection and deposit of the money, having written him stating, in substance, that the money had not yet been collected, the bank must now be held

equitably estopped from making any claim that the money was in fact collected and deposited at an earlier date. He urges that since the bank when he changed his instructions on January 27 was affirmatively representing to him that it had not yet acted on his previous instructions of November 10, it will not now be permitted to show the facts to be otherwise. We think we need not undertake to determine the validity of this theory and argument further than to say that whether or not it might be a valid argument against the bank itself as a going concern, it is not a valid argument against the other creditors of the closed bank, and those are the interests against which appellant is here contending. Certainly the facts show no equitable estoppel against them.

■ The second theory upon which appellant relies to justify his claim of preference is denominated in the brief a theory of "segregation of assets." It is set forth in the printed argument in the following language: "Assuming, however, for the sake of further argument in this case, that there was in truth and in fact an actual deposit under date of January 4, 1926, of this money, then the question arises as to whether or not the action on the part of the plaintiff does not amount in law to a legal segregation of the cash assets of the bank so as to make at least $2500.00 of plaintiff's claim a preferred claim. The plaintiff, learning that the bank had the money, demanded the money at once. Upon that demand the money then became in fact withdrawn and in law segregated from the general assets of the bank. The bank recognized this withdrawal and agreed, and did transmit and turn over to the plaintiff a note and mortgage for $1400.00 and a school warrant for $3,000.00. The plaintiff accepted these two items, thereby releasing that much of the segregated trust funds, but demanding $2500.00 in cash which the bank agreed to remit, the plaintiff only authorizing the retention in open account by the bank of the balance of some $94.00. There remained in the cash assets of the bank at the time of its closing more than $4,000.00, and from the evidence it must be assumed that the bank's cash assets were augmented to an amount in excess of plaintiff's present claim."

In support of this theory appellant cites only two cases, Northwest Lbr. Co. v. Scandinavian American Bk. (1924) 130 Wash. 33, 225 P. 825, 39 A. L. R. 922, and Whitcomb v. Carpenter (1907)

134 Iowa, 227, 111 N. W. 825, 10 L. R. A. (N. S.) 928. In the Washington case the situation was this: The lumber company had outstanding certain bonds secured by trust deed, the defendant bank being the trustee named therein, the interest on the bonds coming due semiannually on January 1 and July 1 of each year. The lumber company also carried in defendant bank an open checking account in which on June 24, 1921, it had a balance of approximately $85,000. On that day the lumber company forwarded to the bank its check for $5,220, being the amount of bond interest coming due July 1, 1921, which was payable at the bank; the provision of the trust deed being that the lumber company should deposit with the bank money necessary to meet principal and interest on the bonds as they came due. The bank received the check on or about June 24, but for some reason did not mark the check paid nor charge the amount thereof to the lumber company's account. On June 30, 1921, the day before the interest came due, the bank failed. The bank at all times from June 24, to and including its failure, had more than the amount of the check in cash on hand. The court held, under those circumstances, that from and after the receipt of the check in question by the bank, the deposit of the lumber company in that bank to the extent of $5,220 became a special deposit for the specific and particular purpose of paying bond interest, and was therefore a preferred claim against the assets of the failed bank. It is manifest that the Washington decision lends no support whatever to the position taken by appellant in the instant case, and the Iowa decision is equally far from being in point on the facts here. This "segregation theory" boils down to this: That if a bank creditor demands that the bank pay him and the bank, although having the money, fails or refuses to pay, then the law immediately segregates as a trust fund enough of its cash to pay the demanding creditor, and if the bank still has that much cash when it closes he is entitled to a preference over other creditors. Appellant fails to cite and we have discovered no cases so holding, and that a trust can be created by a mere demand for payment, failure or refusal to pay, and promise to pay later is not, we think, the law.

Being of the opinion that appellant has failed to establish any right to preference over other general deposit creditors under the

facts and circumstances shown by this record, the judgment and order appealed from are affirmed.

POLLEY and ROBERTS, JJ., concur.

WARREN and RUDOLPH, JJ., deeming themselves disqualified, not sitting.