WAVERLY INDEPENDENT CONSOLIDATED SCHOOL DISTRICT NO. 1, Respondent, v. YOUNG, et al, Appellants.

(253 N. W. 480.)

(File No. 7524. Opinion filed March 6, 1934.)

*K. C. Paterson,* State's Attorney, of Watertown (*J. G. Mc-Farland,* of Watertown, of Counsel), for Appellants.

*Hasche & Foley,* of Watertown, for Respondent .

RUDOLPH, J.  This action is brought by the Waverly independent consolidated school district for the purpose of having certain warrants, issued by it and now in the possession of the defendant, county treasurer of Codington county, returned to the school district.  During all of the times mentioned herein, the State Bank of Waverly was a banking corporation doing business in the town of Waverly.  M. T. Antony was the cashier of the bank, and also clerk of the school district.  The wife of M. T. Antony was assistant cashier of the State Bank of Waverly, and also treasurer of the plaintiff school district.  The school district kept its deposit in the State Bank of Waverly, and at all of the times mentioned herein had on deposit therein more than $15,000.  The amount of the warrants involved in this action is approximately $2,000, which warrants had been issued by the plaintiff school district.  These warrants had been taken to the State Bank of Waverly by the holders, the warrants indorsed, and the bank paid to the holder the amount of the warrants.  Mrs. Antony in each instance signed a printed form on the back of the warrants to the effect that the warrant had been presented and paid, and her books, as treasurer of the school district, showed the payment of these warrants.  However, the account of the school district in the bank was never debited on account of the payment, and the school district account with the bank remained the same after the holders of these warrants had received the cash as it was before.

The county treasurer had a deposit with the State Bank of Waverly, and required the bank to in some manner secure this deposit.  M. T. Antony thereupon had his wife draw a line through the form on the back of the warrants to the effect that they had been redeemed and paid, which form Mrs. Antony had previously signed, and caused her to sign her name to the form on the back of the warrants, which was to the effect that the warrants had

been presented for payment and not paid for want of funds. The warrants in question were then turned over to the county treasurer as security for the county deposit. This was all done without the knowledge or consent of the school board, and the school board had no knowledge or notice of the purported transfer of these warrants to the county treasurer until after the closing of the State Bank of Waverly.

In July, 1931, the State Bank of Waverly suspended and was taken over by the superintendent of banks. At the time of the suspension the school district still had its deposit in the bank, and the county treasurer was holding the warrants in question as security for the county deposit. The county treasurer then undertook to withhold tax money in the possession of the county belonging to the school district in an amount equal to the school district warrants the county held. This action was brought to recover possession of the warrants. The court made findings of fact, conclusions of law, and entered judgment in favor of the plaintiff, and the defendants have appealed.

Because of the decisions of this court in the case of Lewis v. Rutland School District, 60 S. D. 163, 244 N. W. 102, 104, it is earnestly urged that the warrants in question were not in fact paid at the time they were presented at the Waverly bank and the holders thereof received in cash the amount of the warrants. We do not believe it necessary, however, to pass upon this question of payment in this case. There is another feature of the case which we believe to be controlling.

By the judgment it is decreed: " * * * That the said plaintiff is entitled to an equitable offset and the said plaintiff is hereby decreed to be entitled to an equitable set-off for the amount of said warrants in issue in this action as against the indebtedness shown to be owing to said plaintiff from said State Bank of Waverly being the amount of the deposits as the same appears in favor of the plaintiff herein on the books and records of the said State Bank of Waverly at the time of the suspension thereof." If these warrants were not paid when they were presented at the State Bank of Waverly and money received thereon, which for the purposes of this opinion we may concede they were not, then it is evident that the bank at the time it advanced the money on these warrants

and took the warrants into its possession, in effect, purchased the warrants from the holders thereof, and the bank thereafter held and owned a valid and subsisting claim against the plaintiff school district. Had the bank retained these warrants, the school district would have been entitled to offset its deposit in the bank against the warrants in the hands of the bank after the bank's failure. Holman v. Bank, 50 S. D. 524, 210 N. W. 730; Schaeffer v. Ruden, 61 S. D. 64, 246 N. W. 105; Ruden v. Dalkin, 62 S. D. 66, 251 N. W. 807. We are, therefore, confronted with the question of whether the transfer of these warrants by the bank to the county treasurer denied to the school district this right of set-off, to which the trial court decreed the plaintiff school district entitled.

At this point it is important to note one material distinction, in so far as set-off is concerned, between the facts found by the court in this case, and the facts found by the court in the case of Lewis v. Rutland School District, supra. In the Rutland Case, the court found: "That the Board of Education of said defendant school district was at all times kept informed as to the condition of the treasury of said district and as to the outstanding warrants as herein described and had knowledge at all times as to the warrants described herein having been presented and endorsed as not paid for want of funds and that the same had been sold to said Farmers' Savings Bank of Rutland, South Dakota, and that the said treasurer, Carl H. Norberg, made monthly reports to the said Board of Education as required by the statutes of this state, setting forth the amount of said outstanding warrants and that said Board of Education by resolution, duly adopted and approved said reports and confirmed and ratified the presentation, endorsement and sale of said warrants as made by said Treasurer, * * * and that the said Board of Education had knowledge of the warrants owned and held by the plaintiff at all times until the closing of the Farmers' Savings Bank." In response to the above findings, this court in the opinion in the Rutland Case said as follows: "Under the findings of the court which are amply sustained by the evidence the defendant district had notice of the transfer of the warrants by the bank to the plaintiff and this information came to the notice of the defendant district prior to the closing of the bank. There was no matured liability of the Rutland bank to the defendant district existing at the time of or before notice of the transfer

of the warrants to the plaintiff, and the defendant was not entitled to a set-off."

In the instant case the trial court found that the plaintiff school district " * * * had no knowledge or notice of any of the transactions had or acts or things done with reference to or in connection with the said warrants subsequent to the payment thereof by the treasurer of the plaintiff school district and the cancellation of said warrants by her, and had no knowledge or notice of any other act or thing done than as shown by the record of the said treasurer, showing the payment and cancellation thereof and that any act or thing done or transaction had with reference to said warrants subsequent to such payment and cancellation thereof was without the knowledge, consent or ratification of said plaintiff school district and without the payment of any consideration to the said plaintiff school district." In this case, therefore, it was not until after the closing of the bank, by reason of which the liability of the bank to the school district matured, that the board had any knowledge or notice of the transfer of these warrants to the county.

[1, 2] The warrants in question are not negotiable promissory notes or bills of exchange. They are, however, things in action and also nonnegotiable written contracts for the payment of money. Tattersfield v. School District, 60 S. D. 455, 245 N. W. 51. Sections 2307 and 742, R. C. 1919, read respectively as follows:

"§ 2307. *Action by Assignee—Setoff.* In case of an assignment of a thing in action, the action by the assignee shall be without prejudice to any setoff or other defense existing at the time of, or before notice of, the assignment; but this section shall not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before due."

"§ 742. *Non-negotiable Written Contract Assignable by Indorsement.* A non-negotiable written contract for the payment of money or personal property may be transferred by indorsement, in like manner with negotiable instruments. Such indorsement shall transfer all the rights of the assignor under the instrument to the assignee, subject to all equities and defenses existing in favor of the maker at the time of the indorsement."

This court in the early case of Kirby v. Jameson, 9 S. D. 8, 67 N. W. 854, speaking with reference to the construction to be

placed upon these two sections, referred to the California case of St. Louis Nat. Bank v. Gay, 101 Cal. 286, 35 P. 876. California has sections in its Code identical to the said sections 2307 and 742. Construing these two sections, the California court, in the case of Bank v. Gay, said: "The two sections are not contradictory, and therefore the rules of construction which aid in cases of contradictory provisions need not be invoked. The one section is merely an enlargement of or addition to the other, and the law as declared by the two sections is that a defendant may avail himself of a set-off acquired before notice of assignment, provided the set-off be in other respects good." This construction of these statutes has been subsequently approved and affirmed by the California court. See Randol v. Rowe, 5 Cal. Unrep. 379, 44 P. 1068; Helmer v. Parsons, 18 Cal. App. 450, 123 P. 356; McKenney v. Ellsworth, 165 Cal. 326, 132 P. 75; Musto v. Grosjean (Cal. App.) 273 P. 1070. We are of the opinion that this construction of the California court of these two statutes is a reasonable construction, and not contrary to any construction placed thereon by this court. At different times one or the other of these two sections of our Code has been before this court, but apparently never, except in the case of Kirby v. Jameson, supra, has the apparent conflict in the two sections been called to the court's attention, and in the cases where one or the other of these sections of our Code has been before the court, the apparent conflict in the sections was seemingly not material and in any event not relied upon by any of the parties to the action. See State Bank v. Hayes, 16 S. D. 365, 92 N. W. 1068; Barry v. Stover, 20 S. D. 459, 107 N. W. 672, 129 Am. St. Rep. 941; Floete Lumber Co. v. Doherty, 46 S. D. 326, 192 N. W. 751.

Applying this construction of these two sections of our Code, placed upon them by the California court, we are of the opinion that the decree of the lower court, to the effect that the plaintiff is entitled to offset its deposit in the closed bank against these warrants in the hands of the county, should be sustained. There was in this case a matured liability of the State Bank of Waverly to the plaintiff school district existing at the time of or before notice of the transfer of the warrants to the county.

The judgment and order appealed from are affirmed.

ROBERTS, P. J., and CAMPBELL and WARREN, JJ., concur.

POLLEY, J., concurring specially.

POLLEY, J. (concurring specially). While I agree with the disposition made of this case by the majority opinion, I do not agree with what is said in the opinion upon which the conclusion is based.

When the said warrants were presented for payment to the treasurer of the school district, she had on hand in the bank, funds applicable for that purpose, greatly in excess of the aggregate amount of all the warrants. Under these conditions it was her imperative duty to pay them on presentation, and this is exactly what she did. She paid each warrant holder the amount of his warrant in cash. She then indorsed each warrant on the back, "Redeemed and paid," and signed her name as treasurer thereto. She then made an entry in her school district cashbook to the effect that the respective warrants had been paid. In performing these acts she was acting in her capacity as treasurer and was strictly following the provisions of the law. By the act of making the charge on the books of the district of the amount of the warrants against the school district's deposit in the bank, she transferred that amount of money from the school district to the bank, and this regardless of whether any such entry was made on the book of the bank.

Sections 7475 and 7476, R. C. 1919, read as follows:

"§ 7475. The school treasurer shall keep such accounts and make such reports as are required of him by law. He shall pay no money out of the school funds in his hands except upon the warrant of the school board, signed by the clerk and countersigned by the chairman. He shall pay all warrants properly drawn and signed when presented, so long as there is any money in his hands or subject to his order for their payment, and shall draw all money in the hands of the county treasurer belonging to his district, at least once every three months in each year.

"§ 7476. Whenever a warrant is presented to the treasurer for payment, and there is no money in his hands or subject to his order for the payment of such warrant, he shall indorse on such warrant 'Presented for payment this......day of......19.... and not paid for want of funds,' and sign such indorsement. If he has in his hands or subject to his order money for the part pay-

ment of such warrant, he shall make such part payment and indorse the sum on the warrant and add 'Balance not paid for want of funds,' signing the same. He shall keep a correct register of all warrants so presented and indorsed. Every warrant thus presented and indorsed shall draw interest for the amount unpaid at seven per cent per annum until paid: 'Provided, that whenever there shall come into the hands of the treasurer, or subject to his order, money applicable to the payment of any warrant which has been so presented and registered, the treasurer shall notify in writing, by mail, the drawee of such warrant, at his last known place of residence, to present such warrant for payment, and interest shall cease, upon every such warrant, within ten days after such notice shall have been sent and such money shall be held for the payment of such warrant."

School warrants are not negotiable instruments in the sense that they can be transferred by indorsement so as to give the transferee any greater right than that of the transferer; they are mere assignable choses in action. Tattersfield v. School District, 60 S. D. 455, 245 N. W. 51, 54; Lewis v. School District, 60 S. D. 163, 244 N. W. 102; sections 742 and 2307, R. C. 1919. Under the provisions of section 7475, the treasurer, if acting in his capacity as treasurer, upon the presentation of a valid warrant, has no alternative but to pay the same, provided he has on hand sufficient funds applicable to that purpose, and upon such payment such warrant is wholly extinguished as an obligation against the school district.

In support of its contention that the warrants involved came into its possession as valid obligations against the plaintiff school district defendant cites and relies upon Lewis v. Rutland School District, supra, and Tattersfield v. School District, supra. But these cases are not analogous to the present case.

Lewis v. Rutland School District, supra, involved a school district warrant. One Carl H. Norberg was treasurer of the district. He was also cashier and managing officer of the Farmers' Savings Bank of Rutland. The warrant was presented to him for payment. Nothing was said between him and the payee of the warrant as to whether he was to cash the warrant and cancel it, or whether he was to buy the warrant for the bank. He, acting as cashier of the bank, and with the intention of purchasing the

warrant for the bank, paid for it out of funds belonging to the bank, and no charge was made against the funds of the school district on the books of the school district showing that said warrant had been paid with funds belonging to the district. He then indorsed the same, "Presented for payment and not paid for want of funds." Thereafter he as cashier of the bank assigned the said warrant to the plaintiff for which assignment he received the full face value thereof. Plaintiff afterwards presented the same to the treasurer of the school district for payment, but payment was refused, and the plaintiff brought suit for the collection of the warrant. The defense in that case was, as it is in this, that the warrant had been paid and that the indorsement placed thereon by the treasurer to the effect that the warrant had been presented and not paid for want of funds was placed there without authority; that at the time of its presentment the district had in its treasury and in the custody of said treasurer sufficient funds belonging to the district to pay the warrants. But it was a fact that the district never had paid this warrant nor any part thereof, although it had received full face value therefor. Under these circumstances, we held that the plaintiff was entitled to recover.

In the Tattersfield Case the school district owed some $3,000 interest about due on certain bonds. The district had on hand approximately $4,000, but this money was needed for the payment of current expenses, and it became necessary to issue a warrant in order to raise money with which to pay the interest on the bonds. Accordingly, a warrant for $3,000 was issued, payable to the bank with the understanding that the bank would negotiate the same and thereby raise money to pay said interest. The cashier of the bank, who was also treasurer of the district, indorsed the warrant "presented for payment and payment refused for want of funds." The bank then paid the full face value of the warrant on the said interest, and assigned the warrant to the plaintiff in part payment of a debt owed by the bank to plaintiff. The school district had never paid to any one the amount of this warrant, although it had received the full face value therefor, and the irregularity of the manner in which the warrant was issued is the only defense. In the opinion, we said: "The district still retains that benefit and will not be heard under these circumstances to urge the irregularity or illegality of the warrant."

In this case the transaction that took place between the warrant holders and the treasurer of the district was not intended to be one of sale and purchase, or assignment. The warrants were presented to the treasurer for payment, and although the treasurer, for the time being, was acting as cashier of the bank, and paid the money out of the bank till, it was her intention to pay the warrants and retire them—not to buy them. This appears beyond any doubt from her indorsement on the warrants. She had no authority under these circumstances to register the warrants and leave them outstanding drawing interest against the district.

Appellants stress the fact that the money that was used in the payment of the warrants was never charged against the school district's account on the books of the bank. This, of course, should have been done. But it was not the duty of the school board to make such entry. To quote from what we say in Gray Construction Company v. Lillian P. Fantle, Executrix, et al, just handed down, 62 S. D. 345, 253 N. W. 464: "They [in this case the school board] had no control or supervision over the books and are not chargeable with knowledge of the contents thereof." The cashier, M. T. Antony, made a practice of keeping a false record of the account of the school district in the bank. When money was paid out by the treasurer on warrants presented for payment, the amount so paid was charged by the treasurer on the books of the district against the district's deposit in the bank. This showed the correct balance in favor of the district. No such charge was made on the books of the bank. This showed the balance in the bank in favor of the district at the time of its suspension to be much greater than it actually was.

By the transaction that took place between the school treasurer and the warrant holder when the warrants were presented for payment, she either paid them, which extinguished them as obligations of any kind, or she purchased them for the bank. The opinion of the court is based upon the theory that she purchased them for the bank. I think she paid and extinguished them and the provisions of sections 742 and 2307 are in no wise involved; and what is said in the Rutland School Case or the Tattersfield Case has no application.